United States Court of Appeals,

Eleventh Circuit.

No. 96-6747.

Jimmie L. PETERSON;  Alonzo Reese, Plaintiffs-Appellants,

v.

BMI REFRACTORIES, Defendant-Appellee.

Oct. 21, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (NO. Cv 95-n-2260-S), Edwin L. Nelson, Judge.

Before CARNES, Circuit Judge, and HENDERSON and GIBSON[*], Senior Circuit Judges.

CARNES, Circuit Judge:

This race discrimination case started out in state court over two years ago.  After that much time, this appeal should be about the merits of the plaintiffs' lawsuit, and the litigation process should be winding to a close.  Unfortunately, this appeal has nothing to do with the merits of the plaintiffs' lawsuit, which has yet to be tried.  Instead, this appeal involves these three preliminary issues:  (1) whether the district court had removal jurisdiction over this case, which was removed to it from a state court located in another district, which is contrary to the geographic requirements of 28 U.S.C. § 1441(a);  (2) whether the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited the district court (assuming it had jurisdiction) from enjoining further state court proceedings in the removed case;  and (3) whether the district court erred by sanctioning plaintiffs' counsel under 28 U.S.C. § 1927 for unreasonable and vexatious multiplication of the proceedings.

We hold that failure to comply with the geographic requirements of 28 U.S.C. § 1441(a) is a procedural defect that does not deprive a district court of subject matter jurisdiction in a removed case.  We further hold that the Anti-Injunction Act does not prohibit a federal district court from enjoining state court proceedings in a removed case, because such an injunction is "necessary in aid of its jurisdiction," within the meaning of 28 U.S.C. § 2283.  Finally, we hold that despite

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

lamentable lapses in professional courtesy, plaintiffs' counsel did not unreasonably and vexatiously multiply the proceedings in this case within the meaning of 28 U.S.C. § 1927, which is a prerequisite for the imposition of sanctions under that provision.

## I. BACKGROUND

This case has a tortured history, which the nature of the issues obliges us to discuss in some detail. That history includes proceedings in two state courts as well as the United States District Court for the Northern District of Alabama. The district court's opinion, published at 938 F.Supp. 767 (N.D.Ala.1996), organizes that history by forum. Because we draw the facts in this section primarily from the district court's opinion, we will adhere to its organizational format. However, we caution that the events in the three forums overlapped each other on occasion, and those overlaps go to the heart of the issues in this appeal. For that reason, we have appended a chronological summary of the events at the end of this opinion for the convenience of the reader.

### A. PROCEEDINGS IN JEFFERSON COUNTY CIRCUIT COURT

This case began when Jimmie Peterson and Alonzo Reese filed a complaint against BMI Refractories in the Circuit Court of Jefferson County on February 2, 1995. The plaintiffs' complaint alleged race discrimination claims under Title VII, together with various state law claims. The plaintiffs' attorney, Samuel Fisher, listed BMI's address as "268 Oxmoor Court, Birmingham, AL 35209," and service was attempted at that address.

On April 12, 1995, Fisher received notice from the Jefferson County Circuit Clerk that the summons and complaint had been returned "not found." Thereafter, Fisher caused an alias summons to be issued to an address in Montgomery, where Fisher believed BMI's registered agent was in business. However, that summons was returned unserved on April 28, 1995, with the notation "BMIR Inc. Not agent." On June 9, 1995, the Jefferson County Circuit Court dismissed the case without prejudice for failure of service.

On June 28, 1995, Fisher moved the Jefferson County Circuit Court to reinstate the lawsuit and to appoint a special process server. On July 31, 1995, the court granted those motions. Three

2

days later, on August 3, 1995, the summons and complaint were properly served on BMI in Jefferson County, Alabama. One week after that, on August 10, 1995, the case was transferred to Montgomery County Circuit Court.[1]

On September 1, 1995—after the case had been transferred to Montgomery County Circuit Court—BMI filed a notice of removal in federal court. BMI filed that notice in the Northern District of Alabama, which embraces Jefferson County, but not Montgomery County, which lies in the Middle District. On or about the same day it filed its notice of removal in the Northern District, BMI filed a document entitled "Notification of Filing Notice of Removal" with the Clerk of the Jefferson County Circuit Court.[2] That document stated that BMI had filed a notice of removal in federal court.

### B. PROCEEDINGS IN MONTGOMERY COUNTY CIRCUIT COURT

On October 2, 1995, Montgomery County Circuit Judge Sally Greenhaw wrote Fisher, stating: "The Summons and Complaint have not been served in the above styled case. The Plaintiff shall respond within ten days of the court's letter, or the case will be dismissed." The court also sent a copy of that letter to "P.O. Box 1667, Mont. 36102, 832-4950," but the record does not show the source of that address or the intended addressee. In any event, it appears that BMI did not receive a copy. Ten days later, Fisher responded with his own letter to the Montgomery County Circuit Court saying: "This will confirm our telephone conversation of this date with the Clerk in which we advised that the above referenced case has been removed to Federal Court by the Defendants." Apparently, Fisher did not send a copy of his letter to counsel for BMI.

---

[1]The parties dispute whether the case was transferred *sua sponte* or on Fisher's motion. Fisher contends that the state court ordered the transfer over his opposition, but BMI insists that he requested it. The district court did not make a finding either way, and our disposition of the case does not depend upon resolution of the question.

[2]The parties vigorously dispute whether such a document was ever filed. The plaintiffs insist it was not, because the Jefferson County docket sheet does not show a corresponding docket entry. BMI insists that the document was filed, as evidenced by the fact that the document bears a Jefferson County Circuit Court filing stamp. The district court examined the evidence on this point, and made a finding that the document was filed. *See* 938 F.Supp. at 769 n. 3. That finding is not clearly erroneous, so we go with it. *See infra* Part III.B.

Despite Fisher's letter informing the court that the case had been removed, Montgomery County Circuit Judge Eugene Reese (who had taken over the case from Judge Greenhaw) entered an order on February 22, 1996, setting the case for a "status/scheduling" conference to be held on March 20, 1996. A copy of that order was sent to "BMI Refractories, 220 Greenleaf Dr., Montgomery, AL 36106," but the source of that address is unclear.[3] Fisher's copy of the order bears a handwritten note stating: "Peg [Fisher's secretary] called & talked w/law clerk & she said disregard the notice." Consistent with that note, the conference was never held.

On March 12, 1996, "Vonda McLeod," apparently Judge Reese's secretary or law clerk, sent a fax to Fisher's office that stated: "Peggy—this case is currently on our pending list here in Mtgy. Circuit Court. We have no notice of removal in our office, the Circuit Clerks [sic] office or the court file. Please advise!" According to Fisher: "After some back and forth between my office and Montgomery, the message I eventually received from the circuit court was that no evidence of removal existed and the case would be dismissed for lack of prosecution unless I filed a motion for default judgment." BMI has never disputed that Fisher received that message from the Montgomery County Circuit Court.

On March 14, 1996, the plaintiffs filed a form motion for default judgment, signed by Fisher, which stated: "[T]he defendant was served with a copy of the Statement of Claim or Complaint on (date) August 3, 1995 .... [and] has failed to answer or otherwise defend itself against the plaintiff's claim in this case (although a defective removal was attempted on September 1, 1995)." The Alabama Rules of Civil Procedure do not require service of a default motion on a party who has failed to appear, *see* Ala. R. Civ. P. 5(a), and no courtesy copy of Fisher's motion was served on counsel for BMI, as professional courtesy dictated even if court rules did not.

---

[3]In its brief, BMI is equivocal about whether it ever received the order, stating only that 220 Greenleaf Drive is not the address where BMI was served with the complaint. Regardless of whether BMI received the order, however, it appears that BMI's *counsel* did not learn about it until much later.

4

On April 10, Fisher's secretary sent a letter to the Montgomery Circuit Court stating: "Pursuant to my telephone conversation with Vonda in Judge Reese's office, please find enclosed a copy of the summons in the above referenced case, showing that service was perfected on August 3, 1995. It is my understanding that your office does not have a copy of this summons." About thirty days later, on May 9, 1996, Judge Reese entered a default judgment against BMI and scheduled a damages hearing for May 29, 1996. A copy of the judgment was sent to "BMI Refractories, 268 Oxmoor Court, Birmingham, AL 35209." Although that was not BMI's current address, the document eventually was forwarded to the correct address.

### C. PROCEEDINGS IN FEDERAL DISTRICT COURT

After BMI filed its notice of removal on September 1, 1995, the parties engaged in extensive litigation in United States District Court for the Northern District of Alabama. On December 28, 1996, the district court granted BMI judgment on the pleadings as to one claim, and directed the entry of final judgment as to that claim pursuant to Federal Rule of Civil Procedure 54(b). The plaintiffs appealed, and this Court reversed and remanded on August 23, 1996.

Meanwhile, the district court referred the case to mediation on April 3, 1996. At this point, the plaintiffs had (unbeknown to BMI) moved the Montgomery County Circuit Court for entry of a default judgment. Efforts to mediate the case were unsuccessful, and a federal court trial date was set for November 12, 1996.

On May 22, 1996, BMI filed a moved the district court to stay all further proceedings in the Montgomery County Circuit Court, alleging that it had "discovered [Judge Reese's] May 9, 1996, order by accident when one copy was forwarded to it from a former Jefferson County Address." BMI also asked the court to award it the fees, expenses, and costs associated with its prosecution of its motion for a stay. The district court held a hearing on that motion the very next day. Thereafter, the district court contacted Judge Reese, and in the spirit of cooperative federalism the two judges discussed the matter. Judge Reese agreed to delay all further action in the state court pending a jurisdictional decision from the district court.

On June 26, 1996, the district court entered a memorandum opinion and order. Among other things, that opinion and order: (1) held that the district court had jurisdiction over the case; (2) stayed all proceedings in the Montgomery County Circuit Court; (3) imposed sanctions requiring Fisher and his law firm (Gordon, Silberman, Wiggins and Childs), ordering that they pay the attorney fees and other costs incurred by BMI in prosecuting the motion for stay. *See* 938 F.Supp. at 774. This appeal followed. We have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the injunctive component of the district court's interlocutory decision in this case. We have jurisdiction under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), to review the district court's imposition of sanctions against plaintiffs' counsel.

## II. ISSUES AND APPLICABLE STANDARDS OF REVIEW

On appeal, the plaintiffs challenge each of the district court's significant holdings, raising the following three issues:

(1) Whether the district court had subject matter jurisdiction over the case;

(2) Whether the Anti-Injunction Act prohibited the district court from enjoining the Montgomery County proceedings; and

(3) Whether the district court committed reversible error by awarding sanctions against plaintiffs' counsel under 28 U.S.C. § 1927.

This Court reviews jurisdictional issues and other questions of law *de novo. See, e.g., McKusick v. City of Melbourne,* 96 F.3d 478, 482 (11th Cir.1996). Accordingly, we review *de novo* both the issue of whether the district court acquired jurisdiction over this case and also the related legal question of whether the Anti-Injunction Act prohibited the district court from enjoining any further state court proceedings in the case after the case was removed to federal court. We review a district court's award of sanctions under 28 U.S.C. § 1927 for abuse of discretion. *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1545 (11th Cir.1993) (affirming award of sanctions under 28 U.S.C. § 1927 where district court's award was "well within his discretion").

## III. SUBJECT MATTER JURISDICTION

6

The plaintiffs contend that the district court lacks subject matter jurisdiction over this case, because: (1) BMI attempted to remove the case to the wrong district court, *i.e.,* to one whose district did not embrace the place where the state court action was pending; and (2) neither the Jefferson County nor Montgomery County Circuit Courts received proper notice from BMI that the case had been removed. To those contentions, BMI responds that: (1) removal to the wrong district is a procedural defect that has been waived by the plaintiffs and that does not defeat subject matter jurisdiction in any event; and (2) sufficient notice was provided to the state courts to terminate the jurisdiction of those courts. We turn first to the "wrong district" issue.

## A. REMOVAL TO THE WRONG DISTRICT

As an initial matter, we note that there is no question that this case arises under the laws of the United States, in accordance with the jurisdictional provisions of 28 U.S.C. § 1331. This is a Title VII race discrimination case, and § 1331 provides the federal courts with original nonexclusive jurisdiction over such cases. Accordingly, the question is not whether the federal courts have jurisdiction over the subject matter of the plaintiffs' case, but instead is whether an attempted removal to the "wrong" federal district defeats that jurisdiction. In search of an answer, we turn first to the removal statute.

The procedure for invoking the removal jurisdiction of the federal courts is governed by 28 U.S.C. §§ 1441 to 1452. The general rule is found in § 1441(a), which provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court of the United States for the district and division embracing the place where such action is pending.*

28 U.S.C. § 1441(a) (emphasis added).

Here, of course, BMI did *not* remove the case to the "district and division embracing the place where such action is pending." Nothing related to this case was "pending" in the Jefferson County Circuit Court when BMI filed its notice removing the case from that court. To the contrary, the case had been transferred to Montgomery County on August 10, 1995, twenty-two days before BMI filed its notice of removal on September 1, 1995. When BMI filed its notice of removal, the

7

case had already been transferred to the Montgomery County Circuit Court, and Montgomery County was the only place where the action was then pending. Accordingly, BMI's removal procedure was not in compliance with the geographic requirements of 28 U.S.C. § 1441(a). The question, however, is whether failure to comply with those geographic requirements amounts to a *jurisdictional* defect.

The geographic component of § 1441(a) sounds like a venue provision, and BMI argues that it is one. If BMI is correct, that point is significant. As with other procedural defects, parties can waive venue requirements. *See* 28 U.S.C. § 1406 ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose a timely and sufficient objection to the venue."); 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).") Moreover, despite their sharp disagreement about federal court *jurisdiction,* neither party has ever objected to laying *venue* in the Northern District of Alabama. It appears that if forced to be in federal court, the plaintiffs prefer to be in the Northern District (where they and their attorney reside), instead of the Middle District. Whatever their motivation, they have waived any venue objection and are attacking only the jurisdiction of the United States District Court for the Northern District of Alabama.

The Supreme Court has long treated the technical requirements of the federal removal statutes as procedural, not jurisdictional. In *Mackay v. Uinta Development Co.,* 229 U.S. 173, 33 S.Ct. 638, 57 L.Ed. 1138 (1913), the Court was asked to answer a certified question about whether the federal court had jurisdiction to decide a removed case when the removal was "not in conformity with the removal statute," but the defendant nonetheless appeared and litigated in the federal forum. The Supreme Court held that jurisdiction was not defeated by failure to comply with the removal statute, explaining:

> The case was removed in fact, and, while the parties could not give jurisdiction by consent, there was the requisite amount and the diversity or citizenship necessary to give the United States circuit court jurisdiction of the cause. The case, therefore, resolves itself into an inquiry as to whether, if irregularly removed, it could be lawfully tried and determined.

8

Removal proceedings are in the nature of *process* to bring the parties before the United States court. As in other forms of *process,* the litigant has the right to rely upon the statute, and to insist that, in compliance with its terms, the case shall be taken from the state to the Federal court in the proper district, on motion of the proper person, at the proper time, and on giving the proper bond. But these provisions are for the benefit of the defendant, and intended to secure his appearance. When that result is accomplished by his voluntary attendance, the court will not, of its own motion, inquire as to the regularity of the issue or service of the process, or, indeed, whether there was any process at all, since it could be waived, in whole or in part, either expressly or by failing seasonably to object.

*Id.* at 176, 33 S.Ct. at 639 (emphasis added). *Mackay* is an old case, but it has never been overruled.

The quoted passage from *Mackay* indicates that removal to the wrong federal district is a procedural defect subject to waiver.[4] Moreover, *Mackay* is not the only decision of the Supreme Court indicating that the geographic component of § 1441(a) is a venue provision.

In *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331 (1953), the Supreme Court spoke to the issue more directly. *Polizzi* involved a removed case in which both the district court and the court of appeals had held that the district court lacked jurisdiction. Both of those courts had reached that conclusion on the grounds that the defendant was not "doing business" in Florida within the meaning of § 1391, the general federal venue statute. *See id.* at 665, 73 S.Ct. at 902.

The Supreme Court reversed. First, the Court explained that § 1391 "is a general *venue* statute" and that "if its requirements are not satisfied, the District Court is not deprived of jurisdiction, although dismissal of the case might be justified if a timely objection to the venue were

---

[4]We are obliged to characterize *Mackay* 's guidance as an indication instead of an authoritative answer, both because the federal removal statute has been revised on several occasions since 1913, and because *Mackay* 's discussion about the procedural nature of removal "to the Federal court in the proper district" was dicta. The *Mackay* decision does not specify what the removal problem was in that case, but it is clear that the problem was *not* removal to the wrong federal court. The case was brought in Wyoming state court and removed to the United States Circuit Court for the District of Wyoming. *See id.* at 174, 33 S.Ct. at 638.

Even so, dicta from the Supreme Court is not something to be lightly cast aside. *See Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531, 1540 n. 10 (10th Cir.1995); *United States v. Gaudin,* 28 F.3d 943, 956 n. 2 (9th Cir.1994); *United States v. Santana,* 6 F.3d 1, 9 (1st Cir.1993); *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 120 n. 8 (7th Cir.1989); *Donovan v. Red Star Marine Services Inc.,* 739 F.2d 774, 782 (2d Cir.1984).

9

interposed." *Id.* (emphasis added). Moreover, the Court stated that § 1391 did not even apply to the case, because "[t]he *venue* of removed actions is governed by ... § 1441(a)." *Id.* (emphasis added). Speaking directly to the statutory language now relied upon by the plaintiffs to challenge subject matter jurisdiction, the Supreme Court said: "Section 1441(a) expressly provides that the proper *venue* of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending.' " *Id.* at 666, 73 S.Ct. at 902 (emphasis added). In summary, the Supreme Court made plain in *Polizzi* that the geographic component of § 1441(a) is a venue provision, just like the general venue requirements contained in § 1391. The *Polizzi* Court also made plain that failure to comply with those venue requirements does not deprive the district court of subject matter jurisdiction, because 28 U.S.C. § 1406 permits parties to waive venue problems. *See id.* at 665, 73 S.Ct. at 902.

Although we have never before had occasion to construe or apply *Polizzi,* there is precedent in this circuit applying *Mackay* 's guidance with respect to cases removed to federal court without strict compliance with the removal statute. In *Covington v. Indemnity Ins. Co. of North America,* 251 F.2d 930, 932-33 (5th Cir.1958), we held that the district court had jurisdiction over a removed case, despite the fact that the defendant had failed to comply with the requirement contained in 28 U.S.C. § 1446(a) that a copy of "all process, pleadings, and orders" be filed together with the removal petition. In *Covington,* we deemed it "basic law" that "removal proceedings are in the nature of process ... and that mere modal or procedural defects are not jurisdictional." *Id.* (citing *Mackay* ). We held that such defects "are completely without effect upon the removal, if the case is in its nature removable." *Id.* at 933.

Because this case "is in its nature removable," the plaintiffs would appear to have little to stand on in light of the *Mackay, Polizzi,* and *Covington* opinions. However, one of our opinions does provide some foundation for the plaintiffs' argument. In *National Developers, Inc. v. Ciba-Geigy Corp.,* 803 F.2d 616 (11th Cir.1986), we held that the district court for the Middle District of Alabama lacked subject matter jurisdiction over a case that had been removed from the Supreme

10

Court of New York, because the New York action was "pending in the territory covered by the Southern District of New York." *Id.* at 619. Because *National Developers* forms the strongest basis for the plaintiffs' jurisdictional argument, that precedent warrants careful examination.

The procedural history of *National Developers* is complex, but its essentials are as follows: National Developers, Inc. ("NDI") entered into an Alabama contract with two companies ("Ciba" and "Delvan"). Thereafter, NDI filed a lawsuit in the Supreme Court of New York against both Ciba and Delvan for breach of contract. NDI also filed an identical lawsuit against the same defendants in the Circuit Court Barbour County, Alabama. Later, NDI filed for bankruptcy in the Middle District of Alabama. *See id.* at 617-18.

In connection with its bankruptcy, NDI commenced an adversary proceeding against Ciba and Delvan in the bankruptcy court. That adversary proceeding was substantially identical to the claim NDI was pursuing against the same defendants in New York and in Barbour County. Ciba and Devlan removed the Barbour County action to the bankruptcy court in the Middle District of Alabama, the federal district embracing Barbour County. Thereafter, NDI removed the New York case to the bankruptcy court also, and it then petitioned the bankruptcy court to consolidate the two removed cases with the adversary proceeding then pending in that court. *See id.* at 618. In response, Ciba and Delvan moved the bankruptcy court in Alabama to remand the New York action to the New York trial court. *See id.*

Before the bankruptcy court ruled on the motions to consolidate and remand, the Supreme Court held that the Bankruptcy Act of 1978 was an unconstitutional delegation of judicial power to the bankruptcy courts, and the three cases pending in the bankruptcy court were all transferred to the federal district court for the Middle District of Alabama. Thereafter, the cases were consolidated, and Ciba and Delvan's motion to remand the New York action to the New York trial court was denied. *See id.* at 618-19.

Ciba and Delvan appealed the denial of their remand motion, and this Court reversed. We held that the district court lacked subject matter jurisdiction, because the bankruptcy removal statute

11

at issue only permitted removal "to the bankruptcy court for the district where such civil action is pending." *Id.* at 619 (quoting 28 U.S.C. § 1478(a)(1982)). Elaborating, our opinion explained:

> As we have stated, section 1478(a) allowed NDI to remove the New York action to the Bankruptcy Court for the Southern District of New York. If NDI wished to have that action litigated in the Bankruptcy Court for the Middle District of Alabama, it should have removed the action to the bankruptcy court in New York and thereafter moved that court to transfer the action to the Middle District of Alabama pursuant to 28 U.S.C. § 1475 (1982). NDI elected not to follow this *procedure* and instead attempted to remove the New York action directly to the bankruptcy court in the Middle District of Alabama. While it may be true that allowing direct removal of state actions to the bankruptcy court conducting Chapter 11 proceedings would be a more efficient *procedure* than is the mechanism for removal outlined in 28 U.S.C. § 1478(a), we are obligated to enforce the *procedures* selected by the Congress. We conclude that the Bankruptcy Court for the Middle District of Alabama had no *jurisdiction* over the removed New York action; therefore, the district court erred in denying appellants' motion to remand.

*Id.* at 620 (emphasis added) (citation and footnote omitted).

Though our *National Developers* opinion repeatedly refers to the geographic requirements of § 1478(a) as relating to "procedure," it nonetheless concludes that a procedural defect of this nature defeats subject matter jurisdiction. The opinion does not mention *Mackay, Polizzi,* or *Covington,* nor does it make any effort to explain why the venue-like requirements of the bankruptcy removal statute are different in this respect from the other procedural requirements of the general federal removal statute. Of course, whether *National Developers* was correctly decided or not, it remains the law of this circuit with respect to the bankruptcy removal statute, 28 U.S.C. § 1478(a). *See, e.g., United States v. Hutchinson,* 75 F.3d 626, 627 (11th Cir.1996) ("[O]ne panel of this Court cannot revisit another panel's decision"); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").

However, the bankruptcy removal statute is not at issue in this case. Unlike *National Developers,* this case concerns the general removal statute, 28 U.S.C. § 1441(a). We decline to extend the reasoning of *National Developers* beyond the bankruptcy context. Instead, we follow the reasoning of *Mackay, Polizzi,* and *Covington,* and hold that failure to comply with the geographic

12

requirements of § 1441(a) is a procedural defect that does not deprive a district court of subject matter jurisdiction in a removed case.

## B. PROBLEMS WITH NOTICE TO THE STATE COURTS

Having concluded that BMI's failure to comply with the venue provision contained in § 1441(a) did not deprive the district court of jurisdiction, we must decide whether any problems associated with notice to the Jefferson County or Montgomery County Circuit Courts defeat federal jurisdiction. This inquiry need not detain us long.

The district court found that actual notice of removal was filed in the Jefferson County Circuit Court. *See* 938 F.Supp. at 769 n. 3. It based that finding on the affidavit of BMI's attorney and the presence of the filing stamp on the document. *See id.* Despite that finding, the plaintiffs continue to insist that the required notice was not filed in Jefferson County, because there is no corresponding entry on the related Jefferson County docket sheet. The plaintiffs appear to have forgotten that we cannot set aside a district court's finding of fact unless that finding is clearly erroneous, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted). Here, the district court viewed the evidence as supporting the conclusion that actual notice was filed in the Jefferson County Circuit Court. Having reviewed the record, we cannot say that the district court's view of the evidence on this point was an impermissible one.

Turning to the notice provided the Montgomery County Circuit Court, the plaintiffs are entirely correct in observing that BMI never filed any document there to put that court on notice BMI had removed the case to federal court. However, the potential significance of that observation is completely undermined by the fact that the *plaintiffs* provided such notice, both over the telephone and in writing. *See Medrano v. State of Texas,* 580 F.2d 803, 804 (5th Cir.1978) (dicta) (observing that either actual or constructive notice is "sufficient to deprive the state court of jurisdiction" in a removed case).

13

More importantly, failure of notice to the state court is a procedural defect that does not defeat federal jurisdiction, even though a federal court might be justified in granting a timely motion to remand under 28 U.S.C. § 1447 on the grounds of such a defect. *See Covington,* 251 F.2d at 932 (holding that district court acquired jurisdiction in a removed case, even though the notice of removal was defective in that a "copy of all process, pleadings, and orders" was not filed with the removal petition); *see also Mackay,* 229 U.S. at 176, 33 S.Ct. at 639 ("Removal proceedings are in the nature of process...."). For both of these reasons, the district court's removal jurisdiction was not defeated by BMI's failure to file written notice of removal with the Montgomery County Circuit Court.

Accordingly, we reject the plaintiffs' arguments that the United States District Court for the Northern District of Alabama lacked jurisdiction over this case. We turn now to the plaintiffs' arguments concerning the Anti-Injunction Act.

## IV. THE ANTI-INJUNCTION ACT

The plaintiffs contend that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited the district court from entering a stay of the proceedings in state court, even if the federal court had jurisdiction over the case. However, that argument has already been rejected by this Court in *Maseda v. Honda Motor Co.,* 861 F.2d 1248 (11th Cir.1988). In *Maseda,* we expressly held that the Anti-Injunction Act allows a district court to enjoin proceedings in a state case that has been removed to federal court. *See id.* at 1254-55. Such injunctions are permissible, because they fall within the exception that § 2283 provides for injunctions that a federal court finds "necessary in aid of its jurisdiction." *Id.* It is that simple. Accordingly, we reject the plaintiffs' Anti-Injunction Act argument and turn to their final contention, which relates to the sanctions imposed on their counsel.

## V. SANCTIONS AGAINST PLAINTIFFS' COUNSEL

### A. THE REQUIREMENTS OF 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

14

costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Relying on that provision,[5] the district court assessed sanctions against Samuel Fisher, plaintiffs' counsel, requiring him and his law firm to pay the attorney fees and other costs incurred by BMI in prosecuting the motion to stay. *See* 938 F.Supp. at 772-74.

As the district court observed, *see* 938 F.Supp. at 773, there is little case law in this circuit concerning the standards applicable to the award of sanctions under § 1927. Nevertheless, the district court appropriately recognized this circuit's longstanding rule that the provisions of § 1927, being penal in nature, must be strictly construed. *See Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1382 (5th Cir.1979), *aff'd sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

As the plain statutory language makes clear, § 1927 is not a "catch-all" provision for sanctioning objectionable conduct by counsel. Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927. First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not

---

[5]Although the district court explicitly stated that it was considering and deciding "whether [Fisher] should be sanctioned under the terms of 28 U.S.C. § 1927," the court also observed in passing that it retained "an even broader inherent power derived from the common law to impose attorney fees and costs against an attorney who conducts litigation in bad faith." 938 F.Supp. at 773. Notwithstanding that one-sentence observation, the district court did not explain whether or how Fisher's conduct falls within one of the three "narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (citation and internal quotation marks omitted).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44, 111 S.Ct. at 2132 (citation omitted). At the very least, the exercise of "restraint and discretion" requires a district court invoking its inherent powers to make plain that it is so doing and to explain how its employment of those powers falls within the "narrowly defined circumstances" that warrant their use. Because the district court in this case did neither, we will not speculate about whether the court would have been justified in relying on its inherent powers (or any other source of power) in sanctioning Fisher. Instead, we limit our discussion to the one source of power upon which the district court clearly did rely, 28 U.S.C. § 1927.

15

exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927. We turn now to an examination of whether the foregoing requirements were satisfied in this case.

### B. WHETHER FISHER'S OBJECTIONABLE CONDUCT MULTIPLIED THE PROCEEDINGS

We begin with the observation that Samuel Fisher's conduct on some occasions during this litigation has not been in the best and highest traditions of the legal profession. For example, Fisher could and should have provided BMI's counsel with a copy of his letter informing the Montgomery Circuit Court that the case had been removed, even though he had no reason to believe that the Montgomery County Circuit Court would not respect the removal. Fisher could and should have contacted BMI's counsel when he learned on March 12, 1997, that the Montgomery Circuit Court was continuing to exercise jurisdiction over the case. Fisher could and should have provided BMI's counsel with a copy of his motion for default judgment, notwithstanding the fact that Alabama Rule of Civil Procedure 5(a) appeared to relieve him of the legal duty to do so.

There is no better guide to professional courtesy than the golden rule: you should treat opposing counsel the way you yourself would like to be treated. Of course, if Fisher had been representing BMI, he would have wanted a copy of opposing counsel's correspondence with the state court about the case; he would have wanted to be informed that the state court was continuing to exercise jurisdiction over the case; and he certainly would have wanted a copy of the motion for a default judgment against his client, even if the rules did not require he be served with one.

Nevertheless, the issue before us is not whether Fisher could and should have done differently than he did. The issue before us is whether his conduct is sanctionable under 28 U.S.C. § 1927. That section is not a "catch all" provision designed to serve as a basis for sanctioning any and all attorney conduct courts want to discourage. Instead, § 1927 applies only to conduct that "multiplies the proceedings in any case unreasonably and vexatiously." We need not decide if Fisher's conduct was unreasonable and vexatious, because a hard look at the facts of this case

16

convinces us that his conduct did not multiply the proceedings, a prerequisite to imposition of sanctions under § 1927.

In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings. Under the plain statutory language, objectionable conduct—even "unreasonable and vexatious" conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise. As we shall explain, no such causal link exists between Fisher's conduct and the stay proceeding for which the district court assessed costs and attorney fees against Fisher.

In its opinion, the district asserted that "[a] telephone call to defendant's counsel, a motion in this court, or a motion in the state court by Mr. Fisher would have avoided the need for the motion to stay and the attorney fees and costs incurred by the defendant in conjunction with the motion." 938 F.Supp. at 774. That factfinding, however, is clearly erroneous. The undisputed record facts contradict it, and there is no plausible explanation of the evidence to support it.

Up until March 12, 1997, when Fisher first learned that the Montgomery County Circuit Court would not respect BMI's removal of the case to federal court, he had every reason to believe the case was in federal court. After that, Fisher was aware that there could be a serious problem with the federal court's jurisdiction and that his clients might be entitled to a default judgment in their preferred forum—state court. He had also been informed that his clients' case would be dismissed if he failed to move for a default judgment in state court. Particularly in view of our *National Developers* decision, Fisher had a substantial basis for believing, albeit mistakenly, that the federal court lacked jurisdiction over the case and that his clients were at risk of suffering a dismissal from the only court that had jurisdiction, state court. Under such circumstances, Fisher can hardly be faulted for moving for a default judgment.

Of course, as a matter of professional courtesy, Fisher should have contacted BMI's counsel before filing his motion for a default judgment. Had Fisher done so, however, that professional courtesy would only have accelerated BMI's motion for a stay order from the federal court. The stay

17

proceeding would still have been necessary, and there is no evidence that it would have been less costly. All of the prior federal court proceedings in the case would still have been water over the dam. Similarly, if Fisher had alerted the district court of his intention to file a default motion in state court, the need for a federal stay proceeding would not have been reduced in the slightest.

To the extent the district court's opinion might be read to suggest that Fisher should himself have filed a motion in state or federal court seeking to *defeat* the jurisdiction of his clients' preferred forum, the articulation of that proposition suffices to refute it. Our adversarial system does not require counsel to actively pursue the interest of an opposing litigant. Moreover, it still would have been necessary for the federal court to enter a stay order. Because the necessity for a stay proceeding in this case was not causally linked to any objectionable conduct by Fisher (such as his failure to inform opposing counsel or the district court that the state court had refused to recognize the removal), the district court erred by sanctioning Fisher under § 1927 with the costs and attorney fees incurred by BMI in connection with that proceeding.

In summary, this case has taken a wrong turn, resulting in additional litigation that has nothing whatsoever to do with the merits of the plaintiffs' discrimination claims. However, the fault for this exasperating detour does not lie entirely with the plaintiffs' counsel. Part of the blame lies with BMI for failing to inspect the Jefferson County Circuit Court docket sheet prior to filing its notice of removal; a simple inspection of that docket sheet would have informed BMI that the case had been transferred to Montgomery County. Part of the blame lies with the Jefferson County Circuit Clerk's Office for accepting and filing BMI's "Notification of Filing Notice of Removal" in a case that was no longer pending there and for failing to transmit that notification to the Montgomery County Circuit Court where it had previously sent the case. There is plenty of blame to go around, but instead of parceling it out, the time has come to refocus this case on the merits of the plaintiffs' discrimination claims.

## VI. CONCLUSION

18

For the foregoing reasons, we AFFIRM the district court's order insofar as it asserted jurisdiction over the case and enjoined the Montgomery County Circuit Court from proceeding in the removed action. We REVERSE the award of sanctions under 28 U.S.C. § 1927, and we REMAND the case for further proceedings consistent with this opinion.

## APPENDIX: CHRONOLOGY OF EVENTS

**Date** **Forum** [*] **Event**

2/2/95 J Fisher files Peterson's complaint in Jefferson County Circuit Court.

4/12/95 J Fisher receives notice from Jefferson County Clerk that summons and complaint have been returned "not found."

4/25/95 J Fisher causes alias summons and complaint to be sent to BMIR Inc. in Montgomery, Alabama, at address Fisher believes to be the address of BMI's registered agent.

4/28/95 J Alias summons is returned unserved, with notation "BMIR Inc. Not agent."

6/9/95 J Jefferson County Circuit Court dismisses case without prejudice for failure of service.

6/28/95 J Fisher moves the Jefferson County Circuit Court to reinstate the lawsuit and to appoint a special process server.

7/31/95 J Jefferson County Circuit Court grants motion for reinstatement and for appointment of a special process server. On the same day, however, the Jefferson County Circuit Court orders the case transferred to Montgomery County Circuit Court.

8/3/95 J Special process server serves Jefferson County summons and complaint on the defendant in Jefferson County.

8/10/95 J/M Jefferson County Clerk actually transfers the case to Montgomery County Circuit Court.

9/1/95 J/F BMI files a notice of removal in federal court (Northern District of Alabama). On or about the same day, BMI files a document entitled "Notification of Filing Notice of Removal" with the Jefferson County Clerk. The Clerk places a Jefferson County filing stamp on the document, but fails to make a corresponding entry on the docket sheet (apparently because the case had already been transferred to Montgomery County). The parties commence litigating the case in federal court.

10/2/95 M Montgomery County Circuit Judge Sally Greenhaw writes Fisher stating: "The Summons and Complaint have not been served in the above styled case. The Plaintiff shall respond within ten days of the court's letter, or the case will be dismissed."

10/12/95 M Fisher speaks with the Montgomery County Clerk over the phone to inform the Court that the case has been removed to federal court. Fisher writes a confirming letter to Judge Greenhaw stating: "This will confirm our telephone conversation of this date with the

19

Clerk in which we advised that the above referenced case has been removed to Federal Court by the Defendants."

> 10/18/95    F    Fisher files an amended complaint in federal court.

> 11/29/95    F    Parties participate in Rule 16(b) scheduling conference and a scheduling order is entered.

> 12/25/95    F    District court grants judgment on the pleadings as to one of Peterson's claims and certifies that judgment for interlocutory appeal under Rule 54(b).

> 1/25/96    F    Fisher files notice of appeal.

> 2/22/96    M    Circuit Judge Eugene Reese (who had taken over from Judge Greenhaw) enters an order setting the case for a "status/scheduling conference" to be held on 3/20/96. The order indicates that a copy was sent both to Fisher and to "BMI Refractories, 220 Greenleaf Drive, Montgomery AL 36108." BMI's counsel is equivocal about whether BMI actually received a copy of this order, saying only that it was not sent to the address were BMI was served with the complaint. [See Red Br. at 7] Fisher's secretary ("Peg") calls the Montgomery Circuit Court about the order and someone at Fisher's firm annotates their copy of the order as follows: "Peg called & talked with law clerk & she said disregard the notice."

> 3/12/97    M    Vonda McLeod (Judge Reese's secretary or law clerk) sends a fax to Fisher's office stating: "Peggy, this case is currently on our pending list here in Mtgy. We have no notice of removal in our office, the Circuit Clerks (sic) office or the court file. Please advise!" According to Fisher, "After some back and forth between my office and Montgomery, the message I eventually received from the circuit court was that no evidence of removal existed and the case would be dismissed for lack of prosecution unless I filed a motion for default judgment." [R1:30:6]

> 3/14/96    M    Fisher files a form motion for default judgment, which notes that "a defective removal was attempted on September 1, 1995." In accordance with normal Alabama default practice, no copy is served on BMI's counsel.

> 3/20/96    M    Montgomery County Circuit Court annotates scheduling conference record (at which neither party appeared) as follows: "Wait until we hear from Sam Fisher."

> 4/3/96 F    District court refers the case to mediation.

> 6/3/96 F    Mediation hearing is held, but no settlement is reached.

> 5/9/96 M    Montgomery County Circuit Court enters a default judgment against BMI and schedules a damages hearing for 5/29/96. A copy of the judgment is mailed to: "BMI Refractories, 268 Oxmoor Court, Birmingham, AL 35209," which is the same address where Fisher had unsuccessfully attempted to serve the Jefferson County complaint in the first place. This judgment was forwarded to BMI's new address, and eventually reached BMI's counsel.

> 5/22/96    F    BMI moves the district court to stay all proceedings in the Montgomery County Circuit Court.

> 5/26/96    F    The district court enters an order: (1) asserting jurisdiction over the case; (2) staying all proceedings in Montgomery County; (3) imposing sanctions on Fisher and his

law firm;  (4) forwarding a copy of the order to the General Counsel of the Alabama State Bar Association.

        *J = Jefferson County Circuit Court

        M = Montgomery County Circuit Court

        F = Federal District Court