NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2003-1427, 2008-1378, -1400

ALEXANDER S. ORENSHTEYN,

Plaintiff-Appellant,

and

DAVID FINK, TIMOTHY W. JOHNSON,
and FINK & JOHNSON,

Sanctioned Parties-Appellants,

v.

CITRIX SYSTEMS, INC.,

Defendant-Appellee.

Alexander S. Orenshteyn, of Westborough, Massachusetts, pro se.

David Fink, of Houston, Texas, for sanctioned parties-appellants.

Douglas J. Kline, Goodwin Procter, LLP, of Boston, Massachusetts, for defendant-appellee.  With him on the brief was William A. Meunier.

Appealed from:  United States District Court for the Southern District of Florida

Judge Adalberto Jordan

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2003-1427, 2008-1378, -1400

ALEXANDER S. ORENSHTEYN,

Plaintiff-Appellant,

and

DAVID FINK, TIMOTHY W. JOHNSON,
and FINK & JOHNSON,

Sanctioned Parties-Appellants,

v.

CITRIX SYSTEMS, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of Florida in case no. 02-CV-60478, Judge Adalberto Jordan.

_____

DECIDED: July 24, 2009

_____

Before MAYER, LOURIE, and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

## DECISION

Alexander Orenshteyn appeals from the decision of the United States District Court for the Southern District of Florida granting summary judgment of noninfringement of U.S. Patent 5,889,942 ("the '942 patent") and U.S Patent 6,393,569 ("the '569

patent"). <u>Orenshteyn v. Citrix Sys., Inc.</u>, 265 F. Supp. 2d 1323 (S.D. Fl. 2003). Orenshteyn also appeals, along with his counsel at the district court, David Fink and Timothy Johnson, from the district court's imposition of sanctions on Orenshteyn, Fink, and Johnson and assessment of $755,633.17 in attorney fees and costs against the three men, assessed jointly and severally. <u>Orenshteyn v. Citrix Sys., Inc.</u>, No. 02-60478-Civ (S.D. Fla. Jan. 5, 2007) (Dkt. No. 253); <u>Orenshteyn v. Citrix Sys., Inc.</u>, 558 F. Supp. 2d 1251 (S.D. Fla. 2008). Because the district court correctly granted summary judgment as to some of the claims, erred in granting summary judgment of noninfringement as to claim 1 of the '942 patent, and abused its discretion in imposing sanctions, we <u>affirm in part</u>, <u>reverse in part</u> and <u>remand</u>.

## BACKGROUND

Orenshteyn owns the '942 patent and the '569 patent, both of which are entitled "Secured System for Accessing Application Services from a Remote Station." Orenstheyn brought suit against Citrix Systems, Inc. ("Citrix") on April 9, 2002, alleging that Citrix infringed "at least claim 1" of the '942 patent. Two months later, he amended his complaint to include the '569 patent. On March 6, 2003, after the close of discovery, Citrix moved for summary judgment of noninfringement and invalidity of the two patents at issue.

On May 16, 2003, Citrix served Orenshteyn's counsel, Fink, with a motion for sanctions under Rule 11 and a memorandum in support of that motion. The letter stated that Citrix intended to file the enclosed motion with the court unless Orenshteyn dismissed each of his claims against Citrix by June 6, 2003. Rule 11 requires that a

2003-1427, 2008-1378, -1400

plaintiff be afforded a twenty-one day window in which to withdraw an offending action before a motion for sanctions can be filed in a court. Fed. R. Civ. P. 11(c)(2).

On May 20, 2003, four days after Citrix served Fink with its motion for sanctions, the district court granted Citrix's motion for summary judgment of noninfringement. Orenshteyn, 265 F. Supp. 2d at 1324. The court construed the term "controller," found in claim 1 of both the '942 and '569 patents, to mean "something other than a general purpose CPU." Id. at 1329-30. Because it was undisputed that the accused Citrix products all used general purpose CPUs in executing application program code, the court found that "Mr. Orenshteyn ha[d] failed to meet his burden of showing that any of the accused Citrix products infringe on his patents." Id. at 1331.

On June 19, 2003, Citrix filed its motion for sanctions under Rule 11 in the district court. Simultaneously, Citrix filed a motion for attorney fees and expenses against Orenshteyn pursuant to 35 U.S.C. § 285, against Fink and Johnson pursuant to 28 U.S.C. § 1927, and against Orenshteyn, Fink, and Johnson pursuant to the court's inherent powers. The court granted the motion in part. The court found Orenshteyn liable for sanctions under Rule 11 and Fink and Johnson liable under both Rule 11 and 28 U.S.C. § 1927. Orenshteyn, No. 02-60478-Civ, slip op. at 24. The case was then referred to a magistrate judge for a recommendation as to the amount of sanctions. The magistrate judge recommended a total award to Citrix in the amount of $755,663.17 to be assessed jointly and severally against Orenshteyn, Fink, and Johnson. Orenshteyn, 558 F. Supp. 2d at 1264-65. The district court adopted the magistrate's sanction recommendation. Orenshteyn v. Citrix Sys., Inc., No. 02-60478-Civ, slip op. at 2 (S.D. Fla. Apr. 28, 2008) (Dkt. No. 266).

2003-1427, 2008-1378, -1400

-3-

Orenshteyn timely appealed the court's decision regarding noninfringement and sanctions and Fink and Johnson timely appealed the court's decision regarding sanctions. We consolidated the two appeals. We have jurisdiction under 25 U.S.C. § 1295(a)(1).

## DISCUSSION

A. <u>Noninfringement of the '942 and '569 patents</u>

We review the district court's grant of summary judgment <u>de novo</u>, "applying the same criteria used by the district court in the first instance." <u>Rothe Dev. Corp. v. Dep't of Defense</u>, 545 F.3d 1023, 1035 (Fed. Cir. 2008) (quoting <u>W.H. Scott Constr. Co. v. City of Jackson</u>, 199 F.3d 206, 211 (5th Cir. 1999)). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As a preliminary matter, we agree with the district court that Orenshteyn has presented no evidence of infringement of any claim, other than claim 1 of the '942 patent. Furthermore, he has presented no evidence of infringement by any of Citrix's products, other than MetaFrame for Windows 1.8. Orenstheyn's brief opposing summary judgment provided a claim chart comparing claim 1 of the '942 patent to MetaFrame for Windows 1.8. No other claims of either patent are compared with any Citrix product, and no other Citrix product is compared with any other claim. A note at the bottom of the claim chart says, "[a] similar comparison can be made regarding claim 1 of U.S. Patent No. 6,393,569." However, simply claiming that such a comparison <u>can be</u> made is insufficient for purposes of forestalling summary judgment. We therefore

2003-1427, 2008-1378, -1400

-4-

affirm the district court's grant of summary judgment of noninfringement of all claims and all products, except for claim 1 of the '942 patent and MetaFrame for Windows 1.8. What is left for us to determine, therefore, is whether a genuine issue of material fact exists as to infringement of claim 1 of the '942 patent by Citrix's MetaFrame for Windows 1.8 product.

Claim 1 of the '942 patent reads as follows:

1. A secured system for accessing application services from at least one application program, comprising:

at least one client station having low-level application independent logics stored therein and at least one <u>controller</u> for controlling said low-level application independent logics, said low-level application independent logics including a user interface logic, a device control logic for controlling devices, a file system logic, and a communication interface logic, wherein said file system logic includes a file system capable of storing data corresponding to said at least one application program;

at least one application server having high-level application logic stored in a server device for running said at least one application program, said server device being coupled to said at least one application server; and

a low-level interface between said at least one client station and said at least one application server for connecting said at least one client station to said at least one application server,

wherein upon accessing by said at least one client station, said at least one application server runs said at least one application program which selectively controls said low-level application independent logics for controlling devices of said at least one client station and for accessing data of said at least one client station, and wherein said at least one application server processes said corresponding data from said at least one client station on said at least one application program without permanently storing said data in a server device coupled to said at least one application server.

(emphasis added).

As indicated above, the district court construed the term "controller" in Claim 1 "to mean something other than a general purpose CPU." <u>Orenshteyn</u>, 265 F. Supp. 2d at 1329-30. The court then found that because the '942 and '569 patents "use a

2003-1427, 2008-1378, -1400

'controller,' which has been construed as something other than a general purpose CPU," while the accused Citrix products "all use a general purpose CPU to execute application program code," Orenshteyn had failed to show infringement. Id. at 1331

On appeal, Orenshteyn argues that the district court erred in construing the term "controller." Orenshteyn argues that, while the specification of the '942 patent discusses using controllers that are not CPUs in order to lower costs, the specification does not limit his claims to non-CPU controllers. Orenshteyn argues that the district court correctly recognized that the specification discloses an embodiment in which the controller is a CPU, but erred in finding that this embodiment was unclaimed. Orenshteyn argues that claim 2 of the '942 patent and the doctrine of claim differentiation require a construction of "controller" that includes CPUs.

We agree with Orenshteyn that Citrix is not entitled to summary judgment of noninfringement of claim 1. The district court granted Citrix's motion because the MetaFrame product uses a CPU, in contrast to its construction of the '942 patent as referring to something other than a CPU. However, as we shall demonstrate, claim 1 of the '942 patent covers products that employ a CPU, and the district court's grant of summary judgment of noninfringement was therefore erroneous.

Claim 1 of the '942 patent claims a secured system for accessing application services that is made up of a client station connected through an interface with an application server. '942 patent cl. 1. The client station consists of a controller and a number of "low-level application independent logics," such as a user interface logic, a file system logic, and a device control logic. Id. The client station accesses the

2003-1427, 2008-1378, -1400

application server, which runs an application program that in turn controls the application logics of the client station. Id.

Claim 2 of the '942 patent claims the system of claim 1, "wherein said at least one client station lacks a general purpose central processing unit to prevent execution of application program code on said at least one client station, so as to decrease cost and protect said at least one client station." Id. cl. 2. Claim 2 adds to claim 1 only that the "client station lacks a general purpose" CPU. Thus, claim 1, as the parent of dependent claim 2, presumably includes the possibility of a client station that possesses a general purpose CPU; otherwise claim 2 is identical to claim 1 and therefore superfluous. See Xerox Corp v. 3Com Corp., 267 F.3d 1361, 1366 (Fed. Cir. 2001) (stating that reading a limitation into a claim that would render two claims superfluous "will not do").

There can be no doubt, when looking at the specification and comparing claim 2 to claim 1, that a CPU may be included in the client station of claim 1. The district court, in granting summary judgment of noninfringement, found that because Citrix's "products all use a general purpose CPU to execute application program code," those products did not infringe claim 1 of the '942 patent because that claim required the use of a controller, which was construed as "something other than a general purpose CPU." Orenshteyn, 265 F. Supp. 2d at 1329-30. However, as we have demonstrated, because claim 2 claims a client station that "lacks a general purpose [CPU] to prevent execution of application program code," claim 1 impliedly may include just such a CPU.

In support of its decision, the district court noted the portions of the specification that seem to indicate a distinction between a "controller" and a general purpose CPU.

See id. at 1329; '942 patent col.6 ll.17-20 ("expensive general purpose processing CPUs are preferably replaced with inexpensive but powerful controllers, such as DSP chips."); id. c.1 ll.65-67 – col.2 l.1 ("General purpose computing on the desktop, i.e., desktops having a standard OS (such as Windows 95®) and a microprocessor (such as the Pentium® chip), has to be replaced by a system which is less expensive . . . ."). However, those portions of the specification do not "define" the term controller, as the district court held they do. Rather, they suggest that there are inexpensive controllers that are not CPUs; they do not indicate that all controllers are distinct from all CPUs.

Furthermore, another portion of the specification indicates that the invention can, in fact, employ a CPU. '942 patent col.9 ll.48-52 ("It should be understood that general purpose computers will also work with the present invention (with little or no modifications), such that existing owners of PCs can access any specialized server to spawn a selected application, if desired."). The court explained that portion of the specification, which appears to contradict its claim construction, by describing that portion as an "unclaimed invention." Orenshteyn, 265 F. Supp. 2d at 1329. While it is true that a specification may contain unclaimed inventions, we have shown that the claims in this case indicate that the use of a CPU is, in fact, encompassed within the claims. We therefore find that the district court erred in concluding that Citrix failed to demonstrate that there was no genuine issue of material fact concerning infringement of claim 1 of the '942 patent.

B.      Sanctions

This case was not litigated well by Orenshteyn and his counsel. However, while sanctions are awarded by a trial judge who is in the best position to appraise the

2003-1427, 2008-1378, -1400
-8-

conduct of a party and counsel, there is a high standard to be met. We find that that standard was not fully met here.

### 1. Rule 11 Sanctions

"An appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990). In reviewing such decisions, we apply the law of the regional circuit. Intamin, Ltd. v. Magnetar Techs., Corp., 483 F.3d 1328, 1337 (Fed. Cir. 2007). In this case, we apply the law of the Eleventh Circuit.

Citrix presented its motion for Rule 11 sanctions to Orenshteyn's counsel on May 16, 2003. Four days later, the district court entered final judgment of noninfringement. On June 19, 2003, thirty-five days after presenting its motion to counsel, Citrix filed its motion for Rule 11 sanctions with the district court.

Rule 11 requires that a motion for sanctions "must not be filed . . . if the challenged . . . claim . . . is withdrawn within 21 days after service." Fed. R. Civ. P. 11(c)(2). The twenty-one day "safe harbor" provision was added to the rule in 1993. The Eleventh Circuit has recently interpreted the safe harbor provision as requiring a motion for Rule 11 sanctions to be filed prior to final judgment.

> We agree with the Second, Fourth, and Sixth Circuits that the service and filing of a motion for sanctions must occur prior to final judgment or judicial rejection of the offending motion. Any argument to the contrary renders the safe harbor provision a mere formality. The provision cannot have any effect if the court has already denied the motion; it is too late for the offending party to withdraw the challenged contention.

In re Walker, 532 F.3d 1304, 1308 (11th Cir. 2008). In this case, Citrix's motion for sanctions was not filed prior to final judgment, so Orenshteyn was unable to avail himself of the twenty-one day safe harbor provision. The court entered final judgment of

2003-1427, 2008-1378, -1400

noninfringement on both patents before the twenty-one day period had elapsed. Thus, the district court awarded Rule 11 sanctions in circumstances where Orenshteyn was deprived of a benefit provided by the rule, in effect, on an erroneous view of the law. We therefore reverse the court's imposition of Rule 11 sanctions against appellants as an abuse of discretion. See Cooter, 496 U.S. 384, 402 ("If a district court's findings rest on an erroneous view of the law, they may be set aside on that basis." (citation omitted)).

2.    Section 1927 Sanctions

In reviewing sanctions decisions from a district court, we apply the law of the regional circuit in which the district court sits. Nystrom v. Trex Co., 424 F.3d 1136, 1139 (Fed. Cir. 2005). The Eleventh Circuit reviews the district court's award of sanctions under 28 U.S.C. § 1927 under an abuse of discretion standard. Peterson v. BMI Refractories, Inc., 124 F.3d 1386, 1390 (11th Cir. 1997).

Section 1927 states:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Eleventh Circuit imposes three requirements on an award of sanctions under section 1927. The attorney must first engage in "unreasonable and vexatious" conduct. Peterson, 124 F.3d at 1396. Second, the attorney's unreasonable and vexatious conduct must multiply the proceedings. Id. Lastly, the amount of sanctions may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Id.

The district court based its decision to impose sanctions against Fink and Johnson under section 1927 on three aspects of the attorneys' conduct. First, the court found that Fink and Johnson pursued Orenshteyn's claims "recklessly and unreasonably." Orenshteyn, No. 02-60478-Civ, slip op. at 16. As support for that finding, the court noted Fink's and Johnson's continued pursuit of the lawsuit in light of Orenshteyn's apparent agreement with Citrix's expert's claim construction of "controller." Id. Second, the court found that Fink and Johnson had "minimal" contact with Orenshteyn during their pre-filing investigation. Id. at 17. Lastly, the court was disturbed by the fact that neither Fink nor Johnson corrected the apparent inconsistencies between Orenshteyn's deposition testimony and his testimony at the April 8, 2005 hearing regarding Orenshteyn's conversations with counsel prior to filing suit. Id.

As we have reversed the court's summary judgment of noninfringement, it goes without saying that Fink's and Johnson's position regarding infringement and the claim construction of "controller" was not totally unreasonable. As this case has not been tried, and we are merely reversing a grant of summary judgment of noninfringement, we cannot say whether Orenshteyn will eventually prevail in his suit, and the district court has noted that it harbors serious doubts about the '942 patent's validity. Orenshteyn, 265 F. Supp. 2d at 1331 (stating that invalidity arguments "appear to be meritorious"). However, Orenshteyn's position on the claim construction of "controller" was far from frivolous or unreasonable and thus did not vexatiously multiply the proceedings. Therefore, Fink's and Johnson's pursuit of the lawsuit cannot form a basis for sanctions under section 1927.

2003-1427, 2008-1378, -1400

-11-

Furthermore, we do not see why Fink and Johnson should be sanctioned for their "minimal contact" with Orenshteyn during their pre-filing investigation. Both Fink and Johnson have scientific backgrounds that suggest that they are at least competent in conducting an investigation of this sort, and the district court never truly challenged that ability. In addition, there is some advantage in attorneys making their own independent evaluation of a patent infringement issue free from any inherent bias of the inventors. In any event, we can find no authority that requires attorneys to consult with patentees during the pre-filing investigation, although it would seem to be prudent, highly desirable, and the usual practice. Indeed, much of the district court's dim view of Fink and Johnson's conduct may be attributable to the court's erroneous interpretation of Orenshteyn's own view of the correct claim construction of his patent. The court viewed Orenshteyn's deposition testimony as supporting Citrix's proposed claim construction of "controller." See Orenshteyn, No. 02-60478-Civ, slip op. at 13 ("Mr. Orenstheyn similarly testified that the term 'controller,' as used in his patents, means a hardwire device, and not a general purpose CPU." (citing Orenshteyn's deposition at 127-27)); id. at 15 (characterizing Orenshteyn's deposition testimony as "consistent" with Citrix's claim construction). When read in context, however, Orenshteyn's deposition testimony directly contradicts Citrix's proposed claim construction that the term "controller" could not include a general purpose CPU.

Q:     What's a controller?

Orenshteyn: A processing element.

Q:     What's an example?

Orenshteyn: A processor, a chip, an integrated circuit.

2003-1427, 2008-1378, -1400

Q: Could a Pentium chip be a controller?

Orenshteyn: It could be.

A Pentium chip is indisputably a CPU; thus, the court's characterization of Orenshteyn's testimony as supporting Citrix's proposed construction is clearly erroneous.

The last aspect of Fink's and Johnson's conduct for which the court felt sanctions were warranted is their failure to correct Orenshteyn's testimony regarding pre-filing investigation conversations. We defer to the district court's characterization of Orenshteyn's contradictory testimony regarding his conversations with his counsel. The court obviously felt that Fink and Johnson were less than forthcoming in failing to correct Orenshteyn's statements. While it does not appear that this failure alone "multiplied the proceedings" to such a degree that sanctions were warranted under section 1927, we will leave that determination to the district court on remand.

We note, however, that if the court does decide that such conduct alone merits sanctions, a new determination as to the amount of appropriate sanctions would need to be made as well. Under section 1927, only that portion of the applicable costs, expenses, and fees attributable to the multiplication of the proceedings that resulted from the failure to correct testimony could be awarded. See Peterson, 124 F.3d at 1396. That amount would appear to be a fraction of the total litigation cost, but we leave that determination to the district court on remand.

CONCLUSION

Because the court erred in granting summary judgment of noninfringement of claim 1 of the '942 patent, we reverse in part. We affirm the rest of the court's grant of summary judgment relating to the other claims in the case and all Citrix products other

than MetaFrame for Windows 1.8.  We also <u>reverse</u> the court's imposition of Rule 11 sanctions against Orenshteyn, Fink, and Johnson as an abuse of discretion.  We <u>vacate</u> the court's grant of section 1927 sanctions against Fink and Johnson.  We <u>remand</u> the case for further proceedings in accordance with this opinion.