EDWIN G. TORRES, United States Magistrate Judge
This matter is before the Court on Miami Dade-County's ("Defendant" or the "County") Motion (the "Motion") for attorney's fees [D.E. 98] pursuant to 42 U.S.C. § 2000e-5(k) and 28 U.S.C. § 1927 against Gary Glasser ("Glasser") - jointly and severally with Miroslava Litterdragt ("Litterdragt"). On October 19, 2016, Defendant filed its Motion [D.E. 98]; Plaintiff responded on November 22, 2016 [D.E. 104], and Defendant replied on December 7, 2016. [D.E. 107]. Therefore, this Motion is now ripe for disposition. The Court has *1317 reviewed the Motion and its supporting materials, Plaintiff's opposition and supplemental materials and authorities, and Defendant's reply, as well as the record as a whole. For the reasons that follow, Defendant's motion is DENIED .
I. BACKGROUND
This case involves a female police officer who was temporarily relieved of duty pursuant an investigation that took place following allegations that she was missing evidence and open case files. [D.E. 38-1 at ¶ 10]. The Plaintiff has been a police officer at Miami-Dade Police Department since 2004. The events leading up to this case occurred while she was a detective in the General Investigative Unit and on uniform patrol at the Intracoastal District. On February 27, 2012 the Plaintiff transferred out of the GIU to work in uniform patrol. [D.E. 59 at ¶ 7]. Det. Samir Amado replaced the Plaintiff at the GIU.
In response to a drive-by shooting at a funeral home in North Miami in April 2012, Lt. Robert Wilcox ordered Sgt. Jose Pineda to gather all of the open shooting cases that are being investigated by Intracoastal GIU detectives.[1] [D.E. 68 at ¶¶ 15-16]. Sgt. Pineda, Plaintiff's former supervisor at GIU, could not locate any of the Plaintiff's open-pending case files after a search of the GIU office. [D.E. 68 at ¶ 17].
A victim from an open-pending case that the Plaintiff investigated called for a status update on his case. Another GIU detective, Det. Aguilar, took the call and searched for the file to update the victim but was unable to locate the Plaintiff's case file regarding this particular case. [D.E. 68 at ¶ 20]. Sgt. Pineda told Aguilar to contact the Plaintiff in an effort to locate her missing open case files. Aguilar sent Plaintiff a text message inquiring about the files, to which the Plaintiff replied "Good Luck ? what are the dispo? ? CBA? ?" The Plaintiff called Aguilar to explain the situation. She admitted to shredding some files and to missing a box of open pending files. [D.E. 68 at ¶ 24(a) ]. The Plaintiff later characterized the files she shredded as her "shadow files." [D.E. 68 at ¶ 26(a) ].
Aguilar informed Sgt. Pineda that the Plaintiff shredded some of her files. Sgt. Pineda then reported to Lt. Wilcox what Aguilar had told him. On April 17, 2012 Sgt. Pineda set up a meeting with the Plaintiff. The Plaintiff's supervisor on uniform patrol, Lt. Lima, told her to bring all of her open case files to the meeting with Sgt. Pineda. The Plaintiff could not bring any of the files with her to the meeting because the Plaintiff admitted to be missing a box of open-pending files. [D.E. 68 at ¶ 36(a) ].
Following the meeting between the Plaintiff and Sgt. Pineda, Lt. Wilcox ordered all of the sergeants in the Intracoastal District's GIU to account for all of their detective's case files. Sgt. Pineda used the computer filing system to cross-reference what physical files should be associated with each detective. Sgt. Pineda was able to reconcile each detective's case files from his squad, except for the Plaintiff. [D.E. 68 at ¶ 40]. The Plaintiff contends that Sgt. Pineda did not complete a thorough search because during discovery the Plaintiff found that six other detectives were missing case files. [D.E. 68 at ¶ 40(a) ]. The rest of the Intracoastal GIU sergeants reported that they had accounted for all of their detective's case files.
After receiving the report that all of the detectives' case files from the Intracoastal GIU squads were accounted for except the Plaintiff's, Capt. Rock ordered Lt. Wilcox and Sgt. Pineda to notify the Professional Compliance Bureau of the situation. [D.E. 68 at ¶ 48]. Furthermore, Pineda and Wilcox *1318 were able to show Sgt. Calvo of the Professional Compliance Bureau that not only was the Plaintiff missing case files, but she was also missing physical evidence associated with ten of those case files. [D.E. 68 at ¶ 49].
The Professional Compliance Bureau informed the Plaintiff's commanding officers that before it can investigate misconduct the Plaintiff will have to be given a direct order to produce the missing case files. Capt. Rock, the acting Intracoastal District Commander, made the decision in conjunction with the Professional Compliance Bureau to give the Plaintiff a direct order to produce her missing files or be relieved of duty. [D.E. 68 at ¶ 51]. At the time this order was given none of the Plaintiff's former or current chain-of-command knew of any other detectives missing case files. [D.E. 59 at ¶ 62].
On May 2, 2012, Sgt. Pineda and Lt. Lima met with the Plaintiff and ordered her to produce her open case files. [D.E. 59 at ¶ 59]. When the Plaintiff could not produce the missing files, they put her on relieved of duty status. Id. The following day, April 3, 2012, the Professional Compliance Bureau began investigating the Plaintiff's missing files.
While the Plaintiff was relieved of duty she did not receive any reduction in salary and continued enrollment in her employer healthcare and dental benefits. [D.E. 59 at ¶ 55.] The Plaintiff contends that as a result of being relieved of duty she missed out on over-time; she was deprived from working off-duty assignments; she was unable to work the night-shift; she did not have the opportunity to earn a promotion; and she lost the use of a squad car for personal use. [D.E. 68 at ¶ 55(a) ].
The Plaintiff asserts that she filed an EEOC questionnaire and signed the complaint on May 16, 2012 regarding gender discrimination against Miami-Dade Police. [D.E. 68 at ¶ 65(b) ]. The EEOC did not docket the file until May 30, 2012 and the County did not receive the EEOC complaint until June 11, 2012. [D.E. 59 at ¶ 69]. The Plaintiff contends that Sgt. Calvo approached the State Attorney for possible prosecution over the missing files on May 22, 2012 and that he had a copy of the EEOC complaint when he did so. [D.E. 68 at ¶ 65(c) ]. The County contends Sgt. Calvo notified the State Attorney May 16, 2012. [D.E. 59 at ¶ 65]. These dates are immaterial because the County was not served with the EEOC complaint June 11, 2012. Based on the Plaintiff's assertion that she only shredded copies of her files, the State Attorney declined to charge the Plaintiff. The State Attorney closed the Plaintiff's file on August 28, 2013. [D.E. 59 at ¶ 71].
During the investigation into Plaintiff's missing files in November 2013, she first leveled accusations that 13 male detectives were missing files. [D.E. 68 at ¶ 74]. Sgt. Calvo followed up with the detectives accused of missing case files and they all denied, under oath, that they were missing any case files. [D.E. 68 at ¶ 77]. Plaintiff also claimed that her replacement Det. Amado was responsible for her missing files and the chain-of-command has chosen to investigate her and not him. On November 18, 2013, while Sgt. Calvo's investigation was still on-going the Plaintiff was re-instated. Following the investigation the allegations against the Plaintiff were found "not sustained" by the Disposition Panel and she faced no disciplinary actions as a result. [D.E. 59 at ¶ 83].
On August 15, 2016, the Court granted Defendant's motion for summary judgment on Plaintiff's claims for sex discrimination and retaliation under Title VII. [D.E. 91]. The Court subsequently entered final judgment on September 12, 2016. [D.E. 95].
*1319 II. ANALYSIS
The basis for Defendant's Motion is that the County is purportedly entitled to an award of attorney's fees under 42 U.S.C. § 2000e-5(k) because Plaintiff's claims were frivolous, unreasonable, or without foundation. Defendant also contends that the County is entitled to an award of fees against Plaintiff's counsel - Mr. Glasser - under 28 U.S.C. § 1927 for pursuing an unexhausted hostile work environment claim and re-alleging a retaliation claim without any evidence that the Defendant knew of the EEOC charge at the time of the alleged retaliatory conduct.[2] This conduct was allegedly unreasonable and had the effect of unnecessarily multiplying these proceedings. Based on the Defendant's "extremely conservative estimates", the County purportedly incurred $63,825.00 in unnecessary attorney's fees in defense of this lawsuit. On November 10, 2016, Defendant filed a Notice of Partial Settlement indicating to the Court that it withdraws all requests for fees against Plaintiff with prejudice. [D.E. 103]. Because Defendant no longer seeks any attorney fees against the Plaintiff, the Court will only address the remaining portion of the County's Motion seeking fees against Mr. Glasser.
Attorney fees are warranted under 28 U.S.C. § 1927 where "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." There are three essential requirements that must be satisfied with respect to a fee award under § 1927. As the Eleventh Circuit has explained:
First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
Peterson v. BMI Refractories , 124 F.3d 1386, 1396 (11th Cir. 1997) (citations and quotation marks omitted). The first requirement is satisfied "only when the attorney's conduct is so egregious that it is tantamount to bad faith." Hudson v. Int'l Computer Negotiations, Inc. , 499 F.3d 1252, 1262 (11th Cir. 2007) (citation omitted). In fact, "an attorney's conduct must be particularly egregious to warrant the imposition of sanctions" which means the "attorney must knowingly or recklessly pursue a frivolous claim ...." Id. (emphasis in original) (citation omitted). Negligent conduct - standing alone - will not suffice as "something more than a lack of merit is required." Id. (citation omitted). The second requirement - relating to multiple proceedings - is only satisfied when an attorney's conduct "results in proceedings which would not have been conducted otherwise." Daniels v. Sodexo, Inc. , 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (citing Peterson , 124 F.3d at 1396 ).
A. The Retaliation Claim
In assessing whether an attorney's conduct merits bad faith, the determination "turns not on the attorney's subjective intent, but on the attorney's objective conduct." Doria v. Class Action Servs., LLC , 261 F.R.D. 678, 683 (S.D. Fla. 2009) (citing Amlong & Amlong, P.A. v. Denny's, Inc. , 500 F.3d 1230, 1239 (11th Cir. 2007) ). Thus, the crucial component *1320 of this analysis is based on whether the attorney's "conduct was unreasonable and vexatious when measured against an objective standard." Hudson , 499 F.3d at 1262 (citation omitted). Yet, this does not mean that an attorney's intent is completely irrelevant because "an attorney's subjective state of mind is frequently an important piece of the calculus" and an "act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonable and vexatious' if it is done with a malicious purpose or intent." Hudson , 499 F.3d at 1262 (citation omitted).
The County first argues that attorney fees are warranted because Plaintiff's counsel alleged retaliation claims despite having no factual support for the allegations in the Second and Third Amended Complaints. More specifically, Defendant contends that Plaintiff had no basis to assert that Defendant had knowledge of Plaintiff's EEOC charge at the time it referred her case to the State Attorney. Defendant posits that Mr. Glasser's purpose for including this baseless allegation was to allow the Plaintiff to artfully craft her pleadings to evade the Court's ruling dismissing the previous iteration of Plaintiff's retaliation claims for failing to allege a causal connection. [D.E. 29 at 14]. The County admits that there is nothing inherently wrong with amending a complaint to address a court's ruling, but the problem here was that the amendments purportedly lacked any factual support. The result of this alleged deception led the County to litigate a retaliation claim extensively despite the fact that the allegations supporting the claim were contrived with no factual basis. Hence, Mr. Glasser's conduct should be deemed vexatious, warranting the imposition of attorney fees.
More specifically, Mr. Glasser signed a pleading asserting that the Defendant knew of the EEOC charge at the time the case was referred to the State Attorney, even though Mr. Glasser was presented with documentary evidence from the State Attorney and the EEOC showing that this was impossible. The County argues that it is undisputed that the State Attorney received the case from Sgt. Calvo on May 22, 2016. [D.E. 71-5 at 2-3]. Plaintiff also allegedly admitted that Sgt. Calvo contacted the State Attorney on May 22, 2012. [D.E. 68]. But, Defendant argues that the EEOC did not docket Plaintiff's charge until May 30, 2012 [D.E. 1] and that it is undisputed that the charge of discrimination was not received by the Defendant until June 11, 2012. [D.E. 40-1]. For all these reasons, Defendant claims that attorney fees are warranted because Mr. Glasser failed to identify any evidence to support his allegation that Defendant knew of the EEOC charge at the time the case was referred to the State Attorney.
In response, Mr. Glasser argues that Plaintiff's retaliation claim was not frivolous, unreasonable, or without foundation. Specifically, Mr. Glasser posits that there was circumstantial evidence permitting a jury to find that the "decision-maker[ ] knew about the EEOC filing" despite the date stamp on the EEOC notice. [D.E. 104 at 5]. For various reasons asserted in his Response, Mr. Glasses allegedly believed a factfinder could conclude that Defendant was involved before the EEOC filing because inferences could be drawn that the chain of command knew what subordinates were doing and approved their actions. While the Court disagreed with Mr. Glasser at the summary judgment stage and found that Plaintiff failed to come forward with any evidence that the decision maker knew of Plaintiff's EEOC filing, Mr. Glasser argues that this does not mean that Plaintiff had no foundation for her claim or that it was unreasonable.
*1321 The Court agrees with Mr. Glasser that, while Plaintiff's claim may have not survived summary judgment, there is not enough evidence here to conclude that Mr. Glasser's conduct meets the conduct required for attorney fees under § 1927. As the Eleventh Circuit has explained, it is important that courts not:
engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
Cordoba v. Dillard's, Inc. , 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n , 434 U.S. 412, 421-22, 98 S.Ct. 694, 54 L.Ed.2d 648, (1978) ).
Even if Plaintiff's retaliation claim was exceptionally weak - as the County suggests - Defendant has failed to show that it was "entirely 'without foundation' " as required under the statute. See Christiansburg Garment Co. , 434 U.S. at 420, 98 S.Ct. 694. As Mr. Glasser explained in his Response, there were certain facts that were relied upon that suggested that perhaps the chain of command knew how subordinates were behaving and that the decision maker knew of Plaintiff's EEOC filing. In hindsight, this was obviously not the case, but to conclude that Plaintiff's claim lacked foundation whatsoever is a stretch. Accordingly, Defendant has failed to demonstrate how Mr. Glasser's conduct rises to the requisite level of bad faith to warrant attorney fees with respect to Plaintiff's retaliation claim and Defendant's Motion on this basis must be DENIED . See Cordoba , 419 F.3d at 1181. ("Under these circumstances, although Cordoba could ultimately do no more than speculate that Groo was aware of her condition, this speculation was not so unreasonable that it can be termed frivolous. To be sure, Cordoba's claims were weak, and it is easy at this point to recognize that the court and all parties involved would have been better off had they never been pursued.").
B. The Sexual Harassment Claim
As for Plaintiff's sexual harassment claim, Defendant argues that Mr. Glasser had no basis to allege that Plaintiff's claim was not exhausted before the EEOC. Plaintiff's Amended Complaint alleged that she exhausted all administrative remedies and conditions precedent prior to filing suit. [D.E. 16]. The Second Amended Complaint then alleged that Plaintiff exhausted all administrative remedies for her Title VII claims by presenting them to the EEOC. By signing these pleadings, Defendant argues that Mr. Glasser represented to the Court that the factual allegations regarding exhaustion had evidentiary support and the legal contentions were supported by non-frivolous arguments. But, Defendant argues, this was not true and Mr. Glasser was objectively reckless in his failure to investigate whether these claims were in fact exhausted before asserting that they were in a pleading he signed. Mr. Glasser's improper pursuit of unexhausted sexual harassment claims allegedly multiplied the proceedings by requiring the Defendant to perform unnecessary work with respect to both the Amended and Second Amended Complaints. If Mr. Glasser had *1322 not improperly injected the sexual harassment claim into this lawsuit, Defendant claims it would not have had to move to dismiss either Complaint.
Defendant further contends that it interviewed numerous witnesses on this issue, which Defendant would not have done if Mr. Glasser had never asserted a sexual harassment claim. And even after withdrawing the claim, Defendant argues that Mr. Glasser still questioned Lt. Wilcox extensively regarding the sexual harassment allegations during his deposition and intended to raise the issue at trial. Mr. Glasser's persistence in raising this frivolous allegation required Defendant to file an additional motion in limine to exclude the sexual harassment claim.
In response, Mr. Glasser acknowledges that the sexual harassment allegation was an error in judgment, but argues that it was not frivolous or without foundation. Mr. Glasser asserts that the problem with the sexual harassment claim was not because there was no basis for it; instead, Plaintiff had not exhausted her administrative remedies. Mr. Glasser further contends that the facts presented to him at the time by his client laid a factual foundation for the claim and his belief for the merits of the allegation also rested in a written statement of a corroborating witness. Therefore, Mr. Glasser posits that he had a good faith belief that Defendant knew about the EEOC filing and that any reasonably attorney similarly situated would have acted in a similar manner in light of the serious allegations of sexual harassment. Moreover, when the County moved to dismiss the Second Amended Complaint and raised the issue of exhaustion, Mr. Glasser realized the Defendant was correct and voluntarily dropped the claim. While Mr. Glasser should have realized that exhaustion barred recovery, he argues that he did not act unreasonably and that any errors were an honest oversight.
After considering both parties' arguments, the Court finds that attorney's fees are not warranted on the sexual harassment claim. With respect to the Defendant's burden to show that Mr. Glasser's actions constituted bad faith, Mr. Glasser's conduct does not rise to that level. While Mr. Glasser should have realized that Plaintiff's claims were barred for lack of exhaustion before the EEOC, there is not enough evidence to conclude that his conduct "was unreasonable and vexatious when measured against an objective standard." Hudson , 499 F.3d at 1262. Defendant makes a fair point that Mr. Glasser should have realized the lack of merit in Plaintiff's claims. But, Mr. Glasser relied upon specific facts at the time and the statement of a corroborating witness. Taken together, Mr. Glasser was convinced that Plaintiff's claims were far stronger than they were and that they could somehow survive summary judgment. This error - while arguably negligent and lacking merit - is insufficient to rise to the level of bad faith. See Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) ("For sanctions under section 1927 to be appropriate, something more than a lack of merit is required") (citation omitted). Accordingly, Defendant's Motion on this basis is also DENIED .
III. CONCLUSION
For the reasons stated above, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for attorney's fees [D.E. 98] is DENIED .
DONE AND ORDERED in Chambers at Miami, Florida this 5th day of January, 2017.

Lt. Wilcox and Sgt. Pineda are the Plaintiff's former supervisors at the Intracoastal GIU.

Attorney fees under 42 U.S.C. § 2000e-5(k) are aimed at a party whereas 28 U.S.C. § 1927 directs fee awards against a party's counsel.